DRAPER *et al.*, executors, *v.* MEDLOCK.

1. Where a judgment is pleaded as an estoppel, the burden is upon the party relying upon the estoppel to sustain the plea, by showing that the particular matter in controversy was necessarily or actually determined in the former litigation ; and if it appear, from the record introduced in support of the plea, that several issues were involved in such litigation, and the verdict and judgment do not clearly show that this particular issue was then decided, before such plea can be sustained this uncertainty must be removed by extrinsic evidence showing that such matter was then decided in accordance with the contention of the party relying upon the plea.
2. Evidence offered in opposition to such plea, which shows that in the former litigation the parties alleged to be estopped by the judgment therein sought to so amend their pleading as to have the question in controversy in the subsequent litigation determined, and that the court disallowed such amendment, is admissible.

Argued  January  19,— Decided March  4, 1905.

Complaint. Before Judge Russell. Gwinnett superior court. June 4, 1904.

Moore, Marsh & Company brought suit against Medlock, in the city court of Gwinnett county, on three promissory notes which he had made to them. He filed a plea in which he alleged, in substance, that he had turned over to the plaintiffs, as collateral security for the payment of these notes, a certain note made to him by W. I. Zachry and J. L. Richmond, and that the plaintiffs, without his consent, extended the time of payment of that note, and he was thereby discharged from liability to the extent of the amount thereof; also, that by an agreement between the plaintiffs and the makers of that note, it was delivered up and canceled, and two new notes payable to his order were made by them in lieu of it, and were accepted by the plaintiffs as payment pro tanto of his notes, and that the balance due was subsequently paid by him; also, that if the acceptance of the new notes did not operate as payment pro tanto, he was subsequently released from liability to the extent of the amount thereof, by reason of the fact that the plaintiffs, without his consent, extended the time of payment and failed to institute suit thereon until after the makers had become insolvent. He prayed that a deed to land, which he alleged had been made by him to the plaintiffs as security for his indebtedness, be canceled, and that they be required to execute a deed reconveying the land to him. He filed also a petition to the superior court of Gwinnett county, for an injunction against the prosecution of the suit in the city court, and for a decree that the notes sued on were paid and discharged, and that the deed mentioned in his plea be canceled and a reconveyance made to him, for the reasons stated in the plea, a copy of which was embodied in his petition. These pleadings are more fully set out in 101 *Ga.* 94, in which appears a decision affirming a judgment overruling a demurrer to Medlock's petition. Moore, Marsh & Company, in their answer to the petition, denied the truth of Medlock's plea, and prayed that judgment be rendered in their favor for the amount of the notes sued on. The trial resulted in a verdict as follows: "We, the jury, find for the plaintiff, and that the defendants surrender notes and deed to be canceled, and that the defendants execute a deed of conveyance to the property conveyed to them." A decree was rendered in accordance with the verdict.

Afterwards Moore, Marsh & Company brought an action against Medlock, as indorser, on the two notes of Zachry and Richmond referred to in the preceding litigation, and Medlock filed a plea in which he alleged that the issues involved in the pending action were · res adjudicata; that they had been finally adjudicated in his favor by the judgment rendered in his suit against Moore, Marsh & Company. In support of this plea he introduced in evidence the records of the former suits. The plaintiffs offered, in rebuttal, what appeared to be an amendment disallowed by the court, which they had proposed to make to their plea in Medlock's suit against them, and which was in part as follows: "Should it be determined, under the law and facts, that said notes were accepted by these defendants in part payment of the notes sued on in said action in the city court, as averred by plaintiff and denied by defendants in this suit, then defendants aver that said plaintiff . . is liable to them on his said indorsements, and they pray that they may have judgment against him for the amounts of said notes; . . and the defendants pray such other and further relief as the nature of the case may require." At the end of this document was the judge's order, as follows: "This amendment disallowed by the court, the makers of the notes (against whom Medlock, as a surety, would have the right to proceed) not being legally in court." The court refused to allow this paper to be introduced in evidence, on the ground that it was not a part of the record in the case of Medlock *v.* Moore, Marsh & Company. At the close of the evidence, the judge withdrew the case from the jury, sustained the plea of res adjudicata, and dismissed the action. The plaintiffs excepted, assigning as error each of the rulings stated.

*N. L. Hutchins* and *C. H. Brand*, for plaintiffs.
*T. M. Peeples* and *N. L. Hutchins Jr.*, for defendant.

FISH, P. J. 1. The plea of "res adjudicata" in the present case is more properly a plea of estoppel by judgment, as the decree relied on in support of the plea was not rendered in a case involving the same cause of action. Medlock's equitable action against Moore, Marsh & Company, in which this decree was rendered, was brought for the purpose of setting up his defenses to the suit which they had instituted against him in the city court of Gwinnett county, upon the three promissory notes which he indi-

vidually had executed to them, and obtaining certain equitable relief, such as the cancellation of a security deed, etc., which he could not obtain in the city court. This action by Medlock was not an independent suit, but was merely in the nature of an equitable answer to the suit against him in the city court. It is evident that the cause of action in the suit brought by Moore, Marsh & Company against Medlock, in the city court, which was tried under his equitable action in the superior court, was entirely different and distinct from the cause of action in the present case. In the suit in the city court the action was based upon three promissory notes given by Medlock to Moore, Marsh & Company, payable to their order, and signed by him alone, as maker. In the case in hand the suit is based upon Medlock's indorsements of two promissory notes, each payable to his own order, signed by Zachry and Richmond as makers, indorsed in blank by Medlock, and transferred to Moore, Marsh & Company. It is clear that the two suits were upon different instruments or obligations, and the liability upon which the plaintiffs in the suit in the city court sought to recover against Medlock was different from that upon which the plaintiffs in the present case seek to recover against him. *Hill* v. *Freeman,* 7 *Ga.* 211, 220; *Worth* v. *Carmichael,* 114 *Ga.* 699. In the case last cited it was held: "A judgment rendered in litigation between the same parties is not conclusive in a subsequent suit between them on a different cause of action, except as to issues actually made and determined in the former litigation. Accordingly, where two notes were given upon a consideration arising in one and the same transaction, a judgment rendered in favor of the payee against the maker upon one of such notes did not operate to estop the latter from setting up, in a subsequent action brought by the former against him on the other note, a defense which was not in issue when the judgment was rendered." If two notes given by the same maker to the same payee, upon a consideration arising in one and the same transaction, when sued upon separately, represent different causes of action, then it is perfectly obvious that the suit against Medlock, in the city court of Gwinnett county, upon the three promissory notes payable to the order of Moore, Marsh & Company, signed by him as maker, was upon a different cause of action from that involved in the present suit, in the superior court of Gwinnett county, against him upon

his indorsements of two notes payable to his own order, and executed by Zachry and Richmond as makers. Even if, in comparing the causes of action, we look merely to the present case and to whatever cause of action Medlock may be said to have had in his equitable action against Moore, Marsh & Company, ignoring the fact that that was merely in the nature of an equitable answer to their suit against him, it seems hardly necessary to say that *his* cause of action in that proceeding was different from the cause of action of the *plaintiffs* in the present case against him. Whatever cause of action he had and set up then is obliged to be different and distinct from the cause of action set up against him now.

As " a judgment rendered in litigation between the same parties is not conclusive in a subsequent suit between them on a different cause of action, except as to issues actually made and determined in the former litigation," the question arises whether, in the case under consideration, Medlock showed that in the former litigation, upon the result of which he relied to support his plea of " res adjudicata," the issue as to his liability to Moore, Marsh & Company upon his indorsements of the two Zachry and Richmond notes now sued on was both made and determined. For him to sustain his defense of estoppel by judgment, it was necessary for him to show not only that this issue was raised in the former litigation but also that it was then determined in his favor. The defenses which he then set up were contradictory and inconsistent. One of them was, that the two notes of Zachry and Richmond, payable to the order of Medlock, upon the indorsements of which he is sued in the present case, had been accepted by Moore, Marsh & Company as payment, pro tanto, of his indebtedness to them, for which he was entitled to a credit upon the notes on which they were then suing him, and that he had subsequently paid to them the balance left due thereon in cash. It is obvious that if this defense was found by the jury to be sustained by the evidence, their verdict, finding *generally* in his favor, and that his three individual notes and the deed which he had given to secure them be surrendered and cancelled and Moore, Marsh & Company be required to execute a deed reconveying the property described in the security deed to him, naturally followed; and it was wholly unnecessary for them to pass upon the merits of his other defenses. It

is impossible to tell, from the record introduced in support of the plea of estoppel by judgment, upon which of the defenses set up by Medlock in his equitable proceeding against Moore, Marsh & Company the verdict therein was rendered, as the verdict was general. It is evident that if that verdict was based upon the above-stated defense, the decree founded thereon is no bar to the present action against him; for the verdict would then mean no more than that Medlock, after paying his three individual notes which he had given to Moore, Marsh & Company, with the two notes of Zachry and Richmond, indorsed by him, and a certain sum in cash to cover the balance, was entitled to have these individual notes surrendered to him and the deed which he had given to secure them cancelled and the property therein described reconveyed to him. A case decided by this court which is directly in point is *Hunter* v. *Davis*, 19 *Ga.* 413, where it was held: " A judgment is· not a technical estoppel as to any matter, if the matter is not such that it had, of necessity, to be determined by the court and jury, before the court could give the judgment." In that case, the original trustee, named in a deed which conveyed certain negroes and other property in trust for specified purposes and beneficiaries, had been removed for cause and another trustee appointed in his stead, and the new trustee had brought an action of trover for the recovery of four of these negroes, against the person who had them in possession, who was the husband of one of the beneficiaries. Upon the trial of this action, the defendant introduced in evidence a transcript of the record of a suit in equity against him and his wife and the original trustee, brought by the other beneficiaries of the trust, and relied upon the decree therein rendered as an estoppel upon the plaintiff in the trover suit. Upon the trial of the trover case, the judge had in effect charged the jury that the plaintiff, being a party to the decree, was estopped from denying the right of the defendant to hold the negroes during the lifetime of his wife. This court held such. charge to be erroneous, upon the ground that, in order for the decree in the equity cause to be rendered, " it was not *a matter of necessity* that the court should first determine the question" which was involved in the trover suit. Benning, J., who delivered the opinion, said: " Was the right asserted in the action of trover such that it had, of necessity, to be determined by the

court in the equity suit, before it could render the decree which it did render in that suit ? "    Then, after discussing this question, he concluded that "It was, at least, not a matter of necessity that the court, before making the decree, . . should have determined" this question, and that therefore the decree could be no bar to the action in trover.

Another case which is equally in point is *Bradley* v. *Johnson*, 49 *Ga.* 412.    In that case the complainant, as the widow and heir at law of Bradley, filed a bill against the defendant, as the administrator of Bradley, for an accounting and distribution of Bradley's estate, with a prayer for injunction.    On the trial of the case, Johnson, the defendant administrator, introduced in evidence an exemplification from the court of ordinary of the county, from which it appeared that he had made application to that court for letters of administration upon such estate, to which the complainant had entered a caveat, claiming that she, as the widow of Bradley, was entitled to the administration; that the ordinary had granted letters of administration to her; that an appeal had been entered to the superior court; and that the trial in that court resulted in a judgment that the appellant, Johnson, was entitled to administration upon Bradley's estate, which judgment had been certified to the court of ordinary and made the judgment of that court.    The administrator relied upon this evidence as showing that the question whether the complainant was the widow of Bradley had been made in the case in the court of ordinary and there determined against her; and upon such evidence, under the charge of the court, he obtained a verdict and judgment in his favor.    This court, in reversing the judgment, held, that the judgment in the court of ordinary "was conclusive as to the fact that letters of administration had been granted to Johnson on Bradley's estate, when offered in evidence on the trial of the equity cause; but it was not conclusive on that trial upon the point as to whether the complainant was the widow of Bradley;" that it was not an adjudication directly upon that point, and did not purport to decide that question.    In the opinion of the court, Chief Justice Warner, after saying this much, continued as follows: "Moreover, it does not affirmatively appear from the verdict and judgment thereon that the fact of her being the widow of Bradley was the only question made and decided by the judgment of the court of

ordinary; the judgment itself is not directly upon that point, and unless the judgment of the court of ordinary was rendered directly upon that point as shown by the record, the complainant was not estopped by that judgment from proving that she was the widow of Bradley on the trial of the equity cause." Upon a subsequent trial of the case in the superior court, the trial judge held that the complainant was estopped by the judgment in the court of ordinary, and the jury, under his charge, found in favor of the administrator; and, upon writ of error to this court, the judgment was again reversed. This court then held: "A judgment in the court of ordinary on an issue as to the grant of administration on an estate, that letters do issue to one Johnson, does not estop a woman claiming to be the widow of the deceased from the assertion of her right to the estate by a bill in equity, though she was a party to the suit in the ordinary's court and the question there was as to her marriage to the deceased, and though Johnson was contesting with her at the instance of the heirs-at-law of the deceased." Judge Jackson, delivering the opinion, said that the facts in the record did not affect the principle ruled in 49 *Ga.*; and that it was "immaterial for what reason the ordinary granted Johnson the administration, he was not bound to pass upon the question of marriage," and quoted the headnote in *Hunter* v. *Davis*, supra. To the same effect, see *Henderson* v. *Fox*, 80 *Ga.* 438.

A leading case in this country, which has been often approvingly cited and followed, is Russell *v.* Place, 94 U. S. 606, 608, in which it was held: " It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive upon that question in another suit, between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, — as, for example, if it appear that several distinct matters may have been litigated upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, — the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed

by extrinsic evidence showing the precise point involved and determined." This case was followed in DeSollar *v.* Hanscome, 158 U. S. 221, the facts of which case make the decision there rendered peculiarly in point in the case with which we are dealing. In that case, DeSollar filed a bill against Hanscome for the specific performance of an agreement for the sale of certain real estate, made with him by an agent of the defendant. The defendant claimed that the agent had exceeded his authority; but the plaintiff contended that the defendant, after full knowledge of the agreement made by his agent, had ratified it. DeSollar also contended that, by a judgment which had been rendered in his favor, in a common-law action which Hanscome had instituted against him to recover damages alleged to have been sustained in consequence of his having placed this agreement and a certain letter written by Hanscome to his agent upon record, Hanscome was estopped to deny that he had ratified the act of his agent in making the contract in dispute. Mr. Justice Brewer, in delivering the opinion, said: " The plaintiff insists, and that is the burden of his contention, that the judgment in the law action is conclusive as to the fact of the defendant's assent to the contract as executed by his agent, while the defendant claims that it settles only that this plaintiff, acting under the advice of counsel in placing the papers on record, was guilty of no willful and malicious wrong, and, therefore, not liable in damages." Then, after showing, from the charge of the court in the action for damages, that the jury trying that case " were at liberty to find for the defendant, if they thought that in fact the plaintiff had suffered no damages by the filing for record of the letter and agreement," notwithstanding the judge had charged them that " the chief question " was whether the plaintiff had ratified what had been done in his name by his agent, he said: " There is in this case no extrinsic testimony tending to show upon what the verdict of the jury was based. We have simply the record of the former judgment, including therein the testimony and the charge of the court, from which to determine that fact, and in the light of the charge it is obviously a matter of doubt whether the jury found that the agreement made by the agent was ratified by the principal, or that no damage had in fact been sustained by placing the papers upon record. We are not now concerned with the inquiry whether the instructions of

the court were correct or not.　　We look to them simply to see
what questions were submitted to the jury; and if they left it
open to the jury to find for the defendant upon either of the two
propositions, and the verdict does not specify upon which the jury
acted, there can be no certainty that they found upon one rather
than the other.　　The principal contention of the plaintiff, there-
fore, fails."　·The principle ruled was stated, both in the opinion
and the headnote, as follows: " It is of the essence of estoppel by
judgment that it is certain that the precise fact was determined by
the former judgment."

Another case directly in point is Greene v. Bank, 73 Miss. 542,
where it was held: " Where one has been sued as acceptor of a
lost bill of exchange alleged to have been drawn by a certain
firm to its own order, and indorsed by the firm and one of the
members thereof, and on his pleas of non est factum and pay-
ment, and the evidence in support of the same, the defendant has
defeated a recovery, he can not, in a second suit against him as
acceptor of a lost bill, in all respects similar to the preceding bill,
save that it was alleged to have been drawn not by the firm but
by said member thereof, maintain a plea of res judicata, since it is
impossible to say on which of his pleas the jury found for him in
the prior suit, and, if not on that, of payment, the only matter
determined was that he did not accept the particular bill then
sued on, which would not preclude an action on the bill that he
did accept."　　Still another is Augir v. Ryan, 63 Minn. 373,
where it was held:　　"In order that a former judgment should
bind parties in a subsequent action, by way of estoppel as to any
question of fact, it must appear from the judgment, or by extrin-
sic evidence, that such question was within the issues of the
former action and actually litigated and determined therein.　　If
·such judgment and extrinsic evidence leave it a matter of con-
jecture as to what questions of fact were litigated and determined
in the former action, the judgment is not an estoppel."　　It ap-
peared in that case, as it does in this, that several defenses had
been interposed in the former action, but it did not appear upon
what issue the verdict in favor of the defendant was founded.　　In
Hearn v. Boston & Maine Railroad, 67 N. H. 320, it was held:
" A town having been sued for damages caused by an obstruction
in a highway, and the person who placed the obstruction there

having been notified of the suit and having conducted the defence, a general verdict for the defendant is not a bar to a subsequent suit against such person for the same injuries, since it might have been based upon the lack of notice to the town of the existence of the obstruction; and the testimony of jurors is not competent for the purpose of showing that their verdict was in fact based solely on issues material in the second action." In the opinion Chase, J. said: "As the record does not show upon which of the issues the former judgment was founded, it was incumbent upon the defendant, in order to establish an estoppel by that judgment, to prove by extrinsic evidence that it was founded upon the matters that are in issue in this action." The principle is briefly and succinctly stated in Thompson v. Bushnell Co., 80 Fed. 332, as follows: "Unless it appears from the record or consistent extrinsic evidence that the particular matter sought to be concluded was necessarily tried and determined, so that the judgment could not have been rendered without deciding it, there is no estoppel." It follows that the trial judge erred when, at the close of the evidence, he withdrew the case from the jury, sustained "the plea of res adjudicata" and dismissed the plaintiffs' action.

2. The plaintiffs offered in evidence a paper which purported to be an amendment which had been offered by Moore, Marsh & Company to their answer to the equitable petition of Medlock against them, and which had been disallowed by the court. The court refused to allow this paper to be introduced in evidence, upon the ground that it was no part of the record in the case of Medlock v. Moore, Marsh & Company. It does not appear that when this paper was offered in evidence any question was raised as to the necessity for proving that it really was what it purported to be. The title and description of the case which appeared at its head was, "R. O. Medlock vs. Moore, Marsh & Co. In Equity, in Gwinnett Superior Court, March Term, 1900." What purported to be the order of the judge disallowing the amendment appeared at the end of the document, in the following language: "This amendment disallowed by the court, the makers of the notes (against whom Medlock, as a surety, would have the right to proceed) not being legally in court." This was signed officially in the name of the judge of the Western circuit,

the same judge who was presiding in the trial of the present case. The paper was, as we have seen, excluded simply upon the ground that it was no part of the record in the case to which it purported to relate. This proposed and rejected amendment prayed that in the event it should be determined that Moore, Marsh & Company had, as alleged by Medlock, accepted the two notes of Zachry and Richmond, payable to the order of Medlock and indorsed by him, in part payment of the three individual notes of Medlock, upon which they were suing him in the city court of Gwinnett county, then they should have judgment against him for the amount of the Zachry and Richmond notes. While this paper could not be introduced as a part of the record in the case of Medlock v. Moore, Marsh & Company, yet it showed upon its face that in that case Moore, Marsh & Company had sought to have the question as to their right to recover against Medlock, as indorser, upon the very two notes now sued on, determined, in the event the jury should find that they, as alleged by him, had accepted these notes as payment pro tanto of his three individual notes upon which they were then suing him, and that they were not allowed to do so, because Zachry and Richmond were not parties to that case. This was a circumstance tending to show that the court did not then consider that the question of Medlock's liability as indorser on the Zachry and Richmond notes was involved in that case, and that it was not determined by the judgment which is relied upon in the present case as an estoppel. We are clearly of opinion that the mere fact that this paper was no part of the record in the case of Medlock v. Moore, Marsh & Company did not render it inadmissible in evidence. *Butler* v. *Tifton Ry. Co.*, 121 *Ga.* 817.

*Judgment reversed. All the Justices concur, except Cobb, J., disqualified.*