## In re Pietsch

*Reilly & Pearce,* for petitioner.
*E. Leroy Van Roden,* for respondent.

FRONEFIELD, P. J., April 22, 1935.—The present proceeding arises upon a petition to the court to order the guardian of the estate of Harry Henry Pietsch, hereinafter called Pietsch, who was declared a weak-minded person, to pay a sum from his estate toward the support of Mary J. Pietsch, hereinafter called Mary, whom Pietsch married, and to pay counsel fees and costs in a suit brought in New Jersey by Pietsch, acting through his next friend, to annul the marriage.

The prayers of the petition are contested upon the ground that the petitioner, at the time she married Pietsch, had a living husband from whom she was not divorced.

The record shows that on September 30, 1927, a petition was presented to this court by the brother of Pietsch under the Act of May 28, 1907, P. L. 292, as amended, praying the court to declare Pietsch to be unable to care for his property and to appoint a guardian for his estate, whereupon on November 14, 1927, a decree was entered appointing Albert G. Pietsch guardian, and security was given and approved by the court.

On September 8, 1933, Mary J. Pietsch presented her petition to the court, setting forth that she was married to Pietsch on July 4, 1931; that the guardian, as next friend for Pietsch, filed a petition in the chancery court in New Jersey to annual the marriage on the ground of the incompetency of Pietsch at the time the marriage was contracted; that Mary filed an answer averring the competency of Pietsch to contract the marriage relation, after which testimony was taken and a decree handed down by the terms of which the petition to set aside and annul the marriage was dismissed and the marriage declared valid and in full force and effect; that the guardian of Pietsch was ordered to pay to Mary or her solicitor the costs of the suit as taxed, which amounted to $30.12, and a counsel fee of $200; and that the guardian had refused to pay the costs and counsel fees. The petition further averred that she had no assets and that Pietsch was her only means of support. The petition prayed the court to direct the guardian of Pietsch to pay the said costs and counsel fees and to pay a reasonable sum for the support and maintenance of Mary.

The answer of Pietsch by his guardian denied the validity of the marriage, averred that Pietsch was weak-minded from the fall of 1919 until the answer was filed, and averred that he believed that the alleged marriage of July 4, 1931, was not legal, owing to the weak-minded condition of Pietsch. The guardian of Pietsch admitted that the annulment of the marriage was refused and that the marriage was "declared valid and in full force and effect." (The copy of the decree of the chancery court does not, however, so declare, but decrees "that the petitioner's petition be and the same is hereby dismissed"). The answer further averred that the guardian did not have any right to pay the counsel fees and costs as directed by the chancery court of New Jersey.

In pursuance of said petition the court made an order

for support on December 13, 1933, which was complied with.

On July 13, 1934, the guardian for Pietsch filed a petition alleging, inter alia, that at the time of the marriage to him, on July 4, 1931, Mary was the lawful wife of one John J. Nolan, to whom she had been married, from whom she had never been divorced, and who was then living, and prayed that the order for support be revoked and payments be suspended. The payments were suspended until September 26, 1934, on which date the guardian filed an additional answer repeating the averments made on July 13, 1934. On September 28, 1934, the suspension of the order was withdrawn.

On October 17, 1934, testimony was taken, though counsel for Pietsch insisted in the meantime that the marriage to Mary was void and hence the order could not be sustained.

On December 11, 1934, Mary filed her answer to the petitions of July 13, 1934, and of September 26, 1934, averring that Nolan was either deceased or had secured a divorce, and called on the petitioner to prove that he was alive.

## Discussion

This proceeding arises upon a petition to the court, praying that an order be made on the guardian of Harry Henry Pietsch, who was declared a weak-minded person, to pay a sum of money from his estate toward the support of Mary J. Pietsch, hereinafter called Mary, whom Pietsch married on July 4, 1931.

The defense is that at the time Mary and Pietsch were married Mary had a husband, John J. Nolan, living, from whom she was not divorced.

The evidence discloses that on September 24, 1894, Mary J. Shaw (Pietsch) was married in Philadelphia to Fred Groone, who died on January 31, 1903.

On July 11, 1903, Mary married John J. Nolan, and on May 2, 1904, one son was born to them, who died at the age of nineteen.

Nolan and Mary lived together as husband and wife in the City of Philadelphia until December 8, 1905. Nolan had four brothers and two sisters, some of whom lived in Philadelphia and some in Atlantic City, New Jersey. Mary said she last saw her husband in 1905 or 1906, at which time he was living with his mother in Warren Street in Philadelphia. He did not disappear, nor was he lost sight of for such a length of time as would justify a presumption of his decease. Mary testified that Nolan's mother told her about 14 years before she married Pietsch that Nolan was dead, but that is not credible because there is no doubt that he was then living and could have easily been found, if she had made inquiry or caused it to be made, of those who were most likely to know his whereabouts.

On October 14, 1920, Mary married Clifford E. Johnson, who died on October 17, 1930, and on July 4, 1931, she married Pietsch.

Mary never instituted divorce proceedings against Nolan and does not know that Nolan has instituted divorce proceedings against her, nor does she have reason to believe that he has, for she said, "All I know, that he left his home and never came back." There are no children whose legitimacy is in question.

It is clearly established that Nolan was living at the time Mary married Pietsch, in which case she would not be entitled to an order for support, for her marriage is void: Heffner v. Heffner, 23 Pa. 104; Klaas v. Klaas, 14 Pa. Superior Ct. 550; which may be shown in any legal proceeding where it is a pertinent matter: Wayne Twp. v. Porter Twp., 138 Pa. 181; Newlin's Estate, 231 Pa. 312; unless there is something else in the case to warrant a finding, or to justify a presumption, that he had procured a decree of divorce from Mary prior to her marriage with Pietsch, of which there is no evidence.

There is no circumstance moving from Nolan from which it may be inferred that he had procured a divorce. He had not remarried, nor had he acted in such a way

as to raise a presumption that he had been divorced, nor had he disappeared for a sufficient time to raise a presumption of his death.

It is further contended, inasmuch as Pietsch had failed in a suit in New Jersey to annul his marriage upon the ground that when he was married to Mary he had previously been declared, and then was, a weak-minded person, that he is estopped from setting up any other reason why his marriage should be declared void.

It is stated in 19 C. J. 177 that the dismissal of a complaint is no bar to a subsequent suit for the same purpose setting up a different cause of action, where the plaintiff was ignorant of such cause at the time he brought the first suit.

The burden is on him who claims that the suit to annul the marriage is res adjudicata to prove that the question at issue in this suit was determined in that one: Draper et al., Execs., v. Medlock, 122 Ga. 234, 50 S. E. 113. The petition of Mary in this proceeding avers in paragraph 7 that the proceedings in New Jersey attacked the validity of the marriage "on the grounds of incompetency of Harry Henry Pietsch at the time the marriage was contracted", and this is admitted by the answer.

In Prall v. Prall, 58 Fla. 496, 50 So. 867, it is stated:

"When the second suit [in divorce] is upon a different cause of action, but between the same parties as the first, the judgment in the first suit operates as an estoppel in the second suit only as to every point and question that was actually litigated and determined in the first suit, and the first judgment is not conclusive as to other matters that might have been, but were not, litigated or decided. The test of the identity of causes of action, for the purpose of determining the question of *res adjudicata,* is the identity of the facts essential to the maintenance of the actions": Morrison v. Morrison, 142 Mass. 361, 8 N. E. 59; 9 R. C. L. 464.

In the refusal of the New Jersey Court to annul the marriage, "It ordered, adjudged and decreed that the petitioner pay to the defendant or her solicitor the costs of this suit to be taxed and also a counsel fee of two hundred dollars and that she have execution therefor according to the practice of this court", and the petitioner prays a decree directing the guardian of Pietsch to pay those costs and fee.

The "petition for nullity of marriage" was filed by "Harry H. Pietsch by his next friend, Albert G. Pietsch."

The suit was not brought by the guardian, but by the next friend of Pietsch, and, inasmuch as Pietsch was not in mental condition to sue and his guardian did not, the order of the court is not binding on the estate.

By the Act of May 28, 1907, P. L. 292, sec. 6, 50 PS §961, it is provided that: "The guardian . . . shall have precisely the same powers, and be subject to the same duties, as a committee on lunacy in the State of Pennsylvania", and under the Lunacy Act of June 13, 1836, P. L. 589, it has been held that the lunatic and his committee should be joined in a personal action either as plaintiff or defendant: Arnold et al. v. Townsend et al., 14 Phila. 216; Steel v. Young, 4 Watts 459; Uberoth v. The Union National Bank, 9 Phila. 83; Beale et al. v. Coon, 2 Watts 183; Mosebach's Guardian v. Hess, 16 Montg. 16; see also Wood's Estate, 17 D. & C. 770.

And now, April 22, 1935, it is ordered, adjudged and decreed that the prayer of the petitioner, that the guardian for the estate of Harry Henry Pietsch be directed to pay to Mary J. Pietsch $230.12 for counsel fees and costs in accordance with a decree of the chancery court in the State of New Jersey, and that an order be made on the said guardian of said Harry Henry Pietsch to pay Mary J. Pietsch a reasonable sum for her support and maintenance each and every month from funds which will come into the said guardian's hands as guardian, be and is hereby refused and the petition dismissed at the petitioner's costs.