### HALLIDAY *v.* BANK OF STEWART COUNTY.

1. Failure to demur to a plea which sets up no valid defense in law does not preclude the plaintiff from moving to exclude evidence offered in its support.
2. The record of a former suit between the same parties is not admissible in evidence in support of a plea of estoppel by judgment, when it appears therefrom that the subject-matter of the second suit could not have been litigated under the pleadings in the first.

Submitted May 25,—Decided July 11, 1907.

Action for money had and received. Before Judge Littlejohn. Stewart superior court. July 2, 1906.

Halliday brought suit against the Bank of Stewart County, alleging that defendant was indebted to him in the sum of $22.62, besides interest from November 11, 1899, for money had and received to and for his use, etc., which defendant refused to pay;

that it was, in like manner and for like reason, indebted to him in the sum of $493.36, besides interest from November 28, 1899, which amount it also refused to pay. In its answer defendant denied generally the allegations of the petition, except those as to its corporate character and residence, and then, in the third paragraph, alleged: In 1898 defendant extended to plaintiff a line of bank credit, in his business as a cotton warehouseman and buyer of cotton, under an arrangement and agreement, whereby defendant was to accept and pay checks or drafts drawn on it by him for the purchase-price of cotton, in favor of the sellers thereof, which cotton plaintiff expected to buy from time to time during the cotton season of 1898; and plaintiff was to attach to the drafts the respective warehouse receipts for the cotton, and defendant was to hold in pledge and as security for the advances thus made a special property in the cotton. Plaintiff was to keep covered by the cotton receipts and other collateral securities, and deposits and payments of money, all such sums of indebtedness as might arise and become owing by him to defendant, as well from advances of money to pay for cotton as also from checks drawn by him on the bank for purposes other than the purchase of cotton. Under this arrangement, plaintiff became largely indebted to defendant, and, in addition to the cotton warehouse receipts, deposited with defendant a certain rent note given by C. D. Grimes and held by plaintiff for eleven bales of cotton, for rent due and payable in 1899, and another rent note given by D. M. Geeslin, due and payable in 1899, for four bales of cotton, and agreed that defendant should apply the proceeds of said notes to plaintiff's indebtedness to it. The $22.62 and the $493.36 sued for are the proceeds of said rent notes, and said amounts were duly credited by defendant on the debt which plaintiff owed it; and all the cotton pledged by plaintiff with defendant has been accounted for at its true value, and the two sums mentioned above, realized from the sale of the rent cotton, have been fully accounted for to plaintiff, and defendant has fully accounted for all property and money of plaintiff which has come into its hands, and is not indebted to him in any sum whatever.

In addition to this plea of payment, defendant, in the fourth paragraph of the answer, set up the following defense: On March 24, 1899, plaintiff brought in the superior court of Stewart County,

against defendant, an action of complaint for personalty, and defendant appeared and defended the suit and filed certain pleas therein. Copies of the pleadings in that case were attached to the answer, it appearing from the petition therein that the suit was in trover for 233 described bales of cotton, alleged to have belonged to plaintiff and to have been converted by defendant. "By said pleas in said case, and particularly the 3rd and 4th special pleas therein, this defendant set up the indebtedness owing by the plaintiff to this defendant as a reason why . . plaintiff ought not, in equity and good conscience, recover of . . defendant the full value of the property sued for, without allowing and deducting the indebtedness owing by . . plaintiff to this defendant, and as a reason why such verdict and judgment should be meet and just and according to equity and good conscience, making due allowance for, and taking into account the claims and counter-claims growing out of the mutual dealings between the parties." The suit in trover was tried at the April term, 1901, of the court, upon the issues and pleadings therein, "and evidence was offered as to the indebtedness owing by . . plaintiff to this defendant, including and taking into account, as entering into and fixing the balance due on said debt, the aforesaid items of $22.62 and $493.36, in this present action sued for; and said items were passed upon by the court and jury in said case, and by the court the jury were instructed that they might allow the debt, including said items, in fixing the amount of their verdict, and the said items were considered and passed upon by the jury, and the plaintiff received credit therefor, and the same entered into and helped to fix the amount of the verdict and judgment in said case. And in said case a verdict was rendered upon said pleadings, issues, evidence, and instructions of the court, and a judgment duly entered up thereon, a copy of which verdict and judgment is hereto annexed." By an amendment to its answer the defendant admitted a prima facie case in favor of plaintiff and that plaintiff had "the right to recover the amount sued for, save and except for the defense set up in and by paragraphs 3 and 4 of defendant's answer." It then reiterated its defense of estoppel by judgment as alleged in its original answer, and assumed the burden of proof.

Upon the trial the defendant offered in evidence the record of

the trover suit. Plaintiff objected to its admission, upon several grounds, one of which was that the record showed upon its face that the subject-matter of the present suit could not have been litigated in the former one. The court overruled the objections and permitted the record to be introduced in evidence. From this record it appears that the defendant, in the trover suit, filed a general plea of not guilty at the April term, 1899, and in April 1901, filed an amendment to this plea, which amendment is relied on in the present case by defendant to show that the matter now in controversy was involved in the trover action, under the pleadings therein. The first paragraph of this amendment alleged: Plaintiff "at the beginning of the cotton season of 1898, made an arrangement and entered into an agreement with defendant, whereby defendant was to accept such checks or sight drafts as the plaintiff should draw on defendant, in favor of the sellers, for the purchase-price of such cotton as the plaintiff in his business as cotton dealer might buy during said cotton season, . . and plaintiff was to attach to said drafts the warehouse cotton receipts which represented said cotton, and . . said warehouse receipts representing the cotton were to pass into possession and belong to defendant upon payment of the drafts . . ; and defendant was thereby to become the owner of the cotton." It was agreed that plaintiff should sell the cotton, or any part thereof, upon being called on by defendant so to do, and that upon his failure to do so, "upon request or whensoever plaintiff's account was not fully protected by the value of the cotton and plaintiff's bonus, then defendant had the right to sell in its discretion privately or publicly, and without other notice than that to be given plaintiff as aforesaid, . . and apply the proceeds thereof to the account of . . plaintiff with defendant," and place "any overplus which might remain . . to plaintiff's credit in defendant's bank, . . subject to his check." The cotton which forms the subject-matter of the trover suit "was purchased by . . plaintiff under and in pursuance of said agreement," drafts, with the warehouse receipts attached, being presented to defendant and by it paid, and defendant "became vested with the title to said cotton, with the right to call upon plaintiff to sell said cotton, and with the further right to sell said cotton at private sale, should plaintiff upon request fail or omit so to do." The "plain-

tiff being, on the—day of December, 1898, indebted to defendant in the sum of" $5,860.11, "for the purchase-price of said 233 bales of cotton, and the account of plaintiff being unprotected and in danger of loss, by reason of the low price of cotton, and his bonus being exhausted, so paid for by defendant under and in pursuance of said agreement (and being the entire purchase-price thereof), . . defendant on said day called upon" him to sell the cotton, for the purpose of reimbursing defendant, and plaintiff, though afforded a fair and reasonable opportunity so to do, wholly failed and omitted to sell the cotton, or any part thereof. Whereupon defendant, for its own protection, sold the cotton "fairly and honestly, in open market, for its fair value, and the best price which defendant was able to obtain therefor," realizing from its sale the sum of $5,378.65, "and said sum was applied to the debt owing to defendant by plaintiff for the purchase of said cotton." "Wherefore defendant says that it is not in possession of the cotton mentioned and described in plaintiff's petition, and is not guilty of the wrongs and injuries set forth in said petition, and . . plaintiff ought not to further have and maintain his said action."

The 2d paragraph alleged: The 233 bales of cotton were sold by defendant, "for and in behalf of said plaintiff, without objection, and with his knowledge, acquiescence, and consent, and at a price which [he] authorized and consented to. The proceeds of the sale, $5,378.65, "have been accounted for by defendant, to and with plaintiff, and applied by defendant to the payment of an indebtedness of" $5,860.11, "then owing by plaintiff to defendant for money advanced and loaned for the purchase of said cotton at plaintiff's request, and were so applied, . . in accordance with the agreement and understanding between plaintiff and defendant."

The 3d paragraph alleged: The plaintiff, being engaged in the cotton warehousing business in the town of Lumpkin, and desiring to buy cotton, undertook and agreed that if defendant would accept and pay such sight drafts or checks as he might draw on it for the purchase-price of cotton bought by him, he would attach to the drafts the warehouse receipts for the cotton, and that upon payment of the drafts the warehouse receipts should pass to the bank and it should hold and own the cotton represented by the receipts, and have the right to deal therewith in accordance with

the usage governing transactions of that character in that locality. The known and established usage in such locality, which entered into the contract, and the general and universal custom of said business, was that an acceptor, factor, or other person furnishing money with which to buy cotton, or making advances thereon and taking title thereto as security, had the right to sell such cotton, fairly and honestly, at private sale in the usual manner of cotton sales, at the ruling market price, without thirty days notice or other notice to the debtor or pledgor, except such reasonable notice as might be given him without working a delay; and that (for reasons stated) such usage and custom are reasonable, and were well known to persons engaged in buying cotton under such an arrangement. In pursuance of such agreement and arrangement, plaintiff purchased the 233 bales of cotton sued for, and defendant accepted and paid the drafts or checks drawn by him for the purchase-price thereof, and thereby became the holder of the warehouse receipts attached to such drafts, and thus became the holder and owner of the cotton. Afterwards, with defendant's consent, plaintiff shipped the cotton to Columbus, Ga., to be delivered to Blanchard, Humber & Co., upon payment by them to defendant of a draft in its favor sufficient to cover the amount due it by plaintiff; and defendant delivered the warehouse receipts to plaintiff, taking the bill of lading for the cotton in substitution for the same and in lieu thereof. This draft was dishonored; and plaintiff being indebted to defendant in the sum of $5,860.11 for money advanced by it to pay for the cotton, being the full purchase-price thereof, defendant called on him, in December, 1898, to sell said cotton for the purpose of paying this debt. He failed to sell the cotton or to pay the debt, or any part thereof. Defendant, after reasonable notice to him, then exercised its right to sell the cotton for its own protection, and did sell it fairly for its full market value and at the best price that could be obtained. The cotton brought the sum of——dollars, "and defendant has accounted to and with plaintiff therefor, in reduction of plaintiff's said indebtedness. Wherefore defendant says that it is not guilty of the wrongs complained of, and the plaintiff ought not to maintain his said action."

The 4th paragraph was substantially as follows: The cotton sued for was delivered to defendant by plaintiff to secure his indebted-

ness to defendant, which indebtedness was created by the advancement by defendant of the purchase-money of the cotton. The effect of the contract between them was to invest defendant with a special property in the cotton, for the purpose of securing such indebtedness and applying the proceeds of the cotton to the payment of the same. "And to the extent of said debt defendant is entitled to retain and hold said cotton or its proceeds." Plaintiff being indebted to defendant $5,860.11, for money advanced by defendant for his use, "in the purchase of said cotton, and constituting the entire purchase-price thereof, and the said indebtedness being all of it due, and . . plaintiff, being called on so to do, having wholly failed to sell said cotton or to pay said debt, and the value of said cotton, owing to false classification or other cause, being less than the debt, . . defendant, in good faith and in the belief that it was acting within the scope of its rights under the contract, and for the bona fide protection of its own interests, and acting as it believed in the interest of the said Halliday, sold said cotton fairly and honestly, for the highest market price which could be obtained therefor," etc. Defendant realized from such sale $5,378.65, which entire sum was applied to the payment of the debt due to it by plaintiff, "said proceeds being less than said debt." If "defendant was mistaken as to its right of making said sale in that particular manner; and if, by reason of informality of manner of exercising the right of sale, said sale might constitute in law a conversion to the extent of any damage that . . . plaintiff might sustain thereby, . . plaintiff can not in equity and good conscience, or upon legal principles, recover of defendant for such conversion, except compensation to the extent of loss and damage actually sustained in that behalf. And defendant says, that, the said sale being for the full and fair market value of said cotton, . . plaintiff has sustained no loss or damage. And defendant prays that the question of alleged loss or damage and the extent of such loss or damage, if any, may be inquired of, and that such verdict and judgment may be rendered in that behalf as may be meet and just, and according to equity and good conscience."

The 5th paragraph, after setting up the agreement between the parties under which the cotton was bought by plaintiff and paid for by defendant, and that upon delivery of the warehouse re-

ceipts to defendant it should become vested with a special property in the cotton, etc., and that afterwards plaintiff procured defendant's consent to ship the cotton to Columbus, as previously averred, alleged that plaintiff represented that the draft drawn in defendant's favor on Blanchard, Humber & Co. was drawn for an amount authorized by said firm, "based on a true and fair classification of said cotton," and that upon the faith of such representations defendant yielded up the warehouse receipts in exchange for the bill of lading for the cotton, and permitted the cotton to be shipped. It then alleged : Plaintiff, for the purpose of drawing the draft for a larger amount than was authorized by the drawees, "classified said cotton as of a higher grade than the same was entitled to, and . . drew for $911.73 more than he was authorized to do, and by reason thereof said draft was dishonored." Plaintiff, when called upon to sell the cotton, or otherwise protect defendant, wholly failed to do so, and the cotton, by plaintiff's said acts, was subject to demurrage charges, and other expenses, and placed elsewhere than where the contract had contemplated; and defendant, for its protection from loss and injury from plaintiff's said acts, found it necessary to sell the cotton, and sold it fairly," etc. · "Wherefore defendant says that if plaintiff has suffered loss, it was through his own act, fault and wrong, and he ought not to recover in said action."

After the introduction of further evidence by both parties, the jury returned a verdict in favor of the defendant. The plaintiff moved for a new trial, the motion was overruled, and he excepted.

*T. T. James* and *Samuel B. Hatcher,* for plaintiff.

*John I. Hall, O. J. Wimberly,* and *E. T. Hickey,* for defendant.

FISH, C. J.   (After stating the facts.)

1. One ground of the motion for a new trial was, that the court erred in admitting in evidence the record of the trover suit, over the objections urged by plaintiff against its admission. ·It is contended by counsel for defendant ·in error that objection to the introduction of this evidence came too late, as the record offered was "exactly the same" as that "annexed to the plea of res adjudicata as an exhibit and by reference made a part thereof," and that, so far as the record of the present case discloses, there was no demurrer to this plea.   As seen in the statement of facts, one objection urged to the admission of the record of the trover case

was that it showed upon its face that the subject-matter of the case at bar could not have been litigated in that case. This objection did not come too late. "Objection to a plea insufficient in law may be made by a motion to strike the plea; and this practice is to be commended. But the same result may be accomplished by objection to evidence which is offered in support of the plea." *Walden* v. *Walden,* 124 *Ga.* 145; *Crew* v. *Hutcheson,* 115 *Ga.* 511; *Kelly* v. *Strouse,* 116 *Ga.* 872.

2. The objection to the introduction of the record of the former suit, upon the above stated ground, was well taken. It is clear that the matter in controversy in the case on trial could not have been litigated under the plaintiff's pleadings in the former suit. The former suit was in trover for the recovery of 233 described bales of cotton. The present action was brought for money had and received by defendant to plaintiff's use. From the answer of defendant in the immediate case, it appeared that defendant had received the money sued for, as the proceeds of 15 bales of cotton which it had collected on certain rent notes, payable in cotton, which plaintiff had pledged with it as collateral security for the payment of his indebtedness to defendant; and that these 15 bales of cotton were no part of the 233 for which the action of trover was brought, and in fact were not even in existence when that action was instituted. It is clear, therefore, that the rights of the parties relative to these 15 bales of rent cotton could not have been involved and determined in the trover suit, unless they were, as claimed by the defendant, brought into the trial of that action under the "equitable plea" filed therein by defendant, about two years after the institution of the suit. The plaintiff contends that as the former suit sounded in tort and the present one sounds in contract, the subject-matter of this last suit could not have been litigated in the first action. In the view which we take of the case in hand, however, it is not for us now to determine what matters could have been properly pleaded in the trover suit. That was a question to be raised and determined in that case, not in this. The question with which we are concerned is, what were the issues which were actually raised by the pleadings in the former suit? Any issue which was clearly within the scope of the pleadings in that case might have been determined by the verdict and judgment rendered therein, whether the particular pleadings which raised

such issues were, under the technical rules applicable to a case of that character, proper or improper. And any issue which was not within the scope of such pleadings could not have been properly determined upon the trial of that case, no matter what evidence might have been introduced. The technical rules applicable to actions of trover are pertinent here only so far as the fact of their existence may be of assistance in construing allegations, in the trover pleadings, of obscure or doubtful import and purpose; as the intention to inject into the case an issue which could not ordinarily be raised in a trover case should clearly and unmistakably appear, before the pleadings would be construed to have raised it. Defendant contends that its "equitable plea" in the trover case was broad enough to allow and to require, upon the trial of that case, a general accounting between the parties, embracing all of their dealings with each other, growing out of the business arrangement between them set out in its answer in that case; and that the transfer of the two rent notes to defendant by plaintiff, as additional collateral security for his indebtedness, the collection by defendant of the fifteen bales of cotton thereon, its conversion of this cotton into money and crediting the money on plaintiff's account, were a part of such dealings; and that although it received this cotton after the institution of the trover suit, it was bound, under its plea, to account for it on the trial of that case. It further contends that in the trover trial this matter was fully gone into and evidence submitted thereon, and that the same was taken into consideration by the jury and the verdict for the plaintiff was, to the extent of the amount received by defendant for this rent cotton, larger than it otherwise would have been. In other words, its plea amounts to this, that plaintiff has already, in the trover suit, recovered that which he seeks to recover in the present action. Upon the trial under review the defendant introduced evidence for the purpose of proving that this was true. This plea of defendant was not, strictly speaking, a plea of res judicata, but rather, as we have termed it in the above statement of facts, a plea of estoppel by judgment; though it is quite common to call both pleas by the former designation. *Draper* v. *Medlock*, 122 *Ga.* 234-238. It appeared from the plea itself that plaintiff's cause of action in the former suit was different from his cause of action in the present case. "A judgment is not a technical es-

toppel as to any matter, if the matter is not such that it had, of necessity, to be determined by the court or jury, before the court could give the judgment." *Hunter* v. *Davis,* 19 *Ga.* 413; *Bradley* v. *Briggs,* 55 *Ga.* 355. But although the mere production in evidence of the record in a former case between the same parties may not show that the subject-matter of the second suit is res judicata, because it had, of necessity, to be passed upon before the judgment in the previous suit could have been rendered, yet if such subject-matter might have been passed upon in the former litigation, under the pleadings shown by the record therein, the fact that it then was passed on may. be shown by extrinsic evidence. *Draper* v. *Medlock,* supra, and authorities cited. This principle was expressed in *Johnson* v. *Lovelace,* 61 *Ga.* 64, in the following language: "If the record shows that the same matters *might* have been litigated in the former action, then the fact that they were actually decided in that former action may be proved by extrinsic evidence." Obviously the converse of this is true, that is, if the record shows that the same matters could not have been litigated in the former suit, then the fact that they were actually decided therein can not be shown by extrinsic evidence. It is only matters which were put in issue by the pleadings in the former case which can be shown by extrinsic evidence to have been actually decided therein. Extrinsic evidence is not admissible both for the purpose of showing, or raising, the issues in the former case and showing which of such issues were actually decided therein. In courts of record the issues are made by the written pleadings. What the issues were must be shown by the record; whether a particular matter, within such issues, was really litigated and decided upon the trial may be shown by extrinsic evidence. This principle is expressed in Herman on Estoppel and Res Judicata, in the following language: "But while parol evidence may sometimes be admitted for the purpose of limiting the estoppel, it is never allowed to enlarge its operation, or to show what matters foreign to the record were embraced in the verdict." 1 Herm. Estop. 312. It was held in Campbell v. Butts, 3 N. Y. 173, that "A party insisting upon a former recovery as a bar to an action must show that the *record* of the former suit includes the matter alleged to have been determined." And in Burdick v. Post, 12 Barb. (N. Y.) 168, the rule was announced as follows: "A former suit is a bar

only to such claims, or matters, as might have been litigated *under the pleadings and issue as made."* The Supreme Court of Indiana stated the rule thus: "The record produced to support a plea of a former judgment should be of a judgment in a suit in which the cause of action subsequently sued for might have been proved." Athearn v. Brannon, 8 Blackf. 440. In our opinion, the record in the trover suit, which was introduced by defendant, will not stand any of these tests. Let us analyze the amendment to the original answer in the trover case. The first, second, third, and fifth paragraphs thereof, each of which seems to have been intended as a separate plea, are clearly mere amplifications and explanations of the general plea of not guilty. None of them seeks to have a balance struck between the aggregate amount of defendant's liabilities to plaintiff and the total indebtedness of plaintiff to defendant, and a verdict rendered accordingly, but each seeks simply a general verdict in favor of defendant, upon the ground that, under the circumstances and for the reasons stated, it had the right to sell the 233 bales of cotton sued for, at the time when and in the manner that it did so, and appropriate the proceeds toward the payment of the debt due it by the plaintiff, and, therefore, was not guilty of a conversion in so doing.

It is, however, upon the 4th paragraph that defendant in error mainly relies to support its contention that the matters involved in the last suit were within the scope of the pleadings in the first; and this paragraph is called, in the brief of its counsel, its "equitable plea" in the trover case. There is not in this plea any mention of or reference to the rent notes of Grimes and Geeslin, which were deposited with defendant by plaintiff to secure his indebtedness to defendant, nor of the fifteen bales of cotton collected by defendant on these notes, nor is there in such plea, or attached thereto, any itemized statement of the account between the parties, which, if completely set out, might have indicated an intention on the part of the defendant to have, upon the trial of the trover case, a complete accounting between the parties covering all their mutual dealings under the business arrangement between them set up in the plea, and also have shown that the matter now in controversy was embraced in such itemized account, and hence was intended to be taken into consideration in determining where and how the balance of indebtedness stood. There is not in this plea

any reference whatever to any liability of the defendant to the plaintiff, past or present, except its liability for the value of the 233 bales of cotton, which it alleged had been extinguished by its appropriation of the proceeds of the sale of such cotton as a credit on the amount due it by the plaintiff, for the money advanced by it to pay for the cotton. On the contrary, the plea, after alleging that the cotton sued for "was delivered to defendant by plaintiff to secure plaintiff's indebtedness to defendant, which indebtedness was created by advancement by defendant for plaintiff . . of the purchase-price of said cotton," alleged that "to the extent of said debt the defendant is entitled to retain and hold said cotton or its proceeds." This allegation is inconsistent with the idea that it was the intention of the pleader that the money received by the defendant from the sale of the fifteen bales of rent cotton should be taken into consideration, for if it were taken into consideration and applied by the jury as a credit on the debt created by the advance of the purchase-price of the 233 bales of cotton sued for, then defendant would not be entitled to retain and hold the proceeds of the cotton sued for *to the extent of the debt* created by the money advanced for its purchase. Nor do we discover any prayer for a general accounting between the parties as to all matters connected with their mutual dealings, under the agreement or arrangement between them set up in the plea. The prayer, which immediately followed the allegation that the sale of the 233 bales of cotton embraced in the trover suit "being for the full and fair market value of said cotton," the plaintiff had sustained no loss or damage, was in the following words: "And defendant prays that the question of alleged loss or damage, and the extent of such loss or damage, if any, may be inquired of, and that such verdict and judgment may be rendered in that behalf as may be meet and just, and according to equity and good conscience." Whatever may have been the undisclosed intention of the pleader, this prayer, by its terms, confined the question to be inquired into and determined to the loss or damage, if any, of the plaintiff by the defendant's sale of the cotton, and the extent of such loss or damage. It seems clear that the question whether the plaintiff had lost anything by the defendant's selling the cotton when and as it did, and if so, how much, could not involve the consideration of the disposition made of any other collateral held by the defend-

ant. Especially would this seem to be true as to collateral sub-sequently disposed of. While the question whether defendant was indebted to plaintiff, or plaintiff indebted to defendant, might well involve a consideration of all the items embraced in a true account between them, we fail to see how the naked question of the loss. or damage sustained by plaintiff, by defendant's sale of a particular lot of cotton, could involve the consideration of the question whether the defendant was otherwise indebted to the plaintiff.

The concluding clause of the prayer, which counsel for defendant in error seem to stress in their brief, does not broaden the scope of the inquiry already prayed for, but merely prays "that such verdict and judgment may be rendered *in that behalf* as may be meet and just, and according to equity and good conscience." This apparently means no more than that such verdict and judgment may be rendered in behalf of the plaintiff's loss or damage by the sale of the cotton as may be meet and just and according to equity and good conscience. Our construction of this plea is, that it sought to escape the usual consequences, in a trover suit, of proof of conversion—that is, a verdict in favor of the plaintiff for the recovery of the property, or its highest proved market value,—upon the ground that if there had been a technical conversion of the cotton by the defendant, it was simply through an honest mistake on its part as to its rights; and as it had acted in the utmost good faith in the matter, and had applied the entire proceeds received by it from the sale of the cotton, to the payment of the debt which it held against the plaintiff, and the parties had agreed that when the cotton was sold its proceeds should be so applied, the plaintiff ought not to recover anything more than his actual.loss or damage, that is, the difference between the highest proved value of the cotton and the amount for which the defendant sold it. The defendant did not in this plea, or in any of the others, plead set-off or recoupment; nor did it even allege any equitable ground upon which a plea of set-off or recoupment could be based in a trover case. While it alleged the amount of the plaintiff's indebtedness to it at the time that it sold the cotton, there was no prayer for a judgment for defendant for any balance of indebtedness that might be found in its favor; nor was there any prayer that, in .the event the proof should show a tech-nical conversion of the cotton sued for, the plaintiff's indebtedness

to defendant should be set-off against the amount which the jury should find as the value of the cotton converted. The plea alleged the amount of plaintiff's indebtedness to defendant at the time it sold the cotton; that this indebtedness was for purchase-money which defendant had advanced to plaintiff to pay for this very cotton; that, under the agreement between the parties, defendant had held this cotton to secure this indebtedness, and, when it sold the same, had applied the proceeds to the payment of this debt; but these allegations were all apparently for the sole purpose of showing that, in equity and good conscience, the plaintiff ought not to be allowed to recover the full value of the cotton, but only what he had lost, if anything, by the irregular sale of the cotton by defendant. A fair test of the question which we have been considering would be to suppose that the plaintiff in the trover trial had, over the objection of the defendant, sought to increase his recovery by showing that the defendant was not only liable to him in damages for the conversion of the 233 bales of cotton sued for, but was also liable to him for the proceeds of the rent notes of Grimes and Geeslin, which he had deposited with defendant. He had not sued for the proceeds of these rent notes, and so the evidence would not have been admissible under the allegations of his petition; and we fail to see how he could have shown to the court that it was admissible under the answer of the defendant.

As the subject-matter of the present suit was not within the scope of the pleadings in the former suit, the court erred in admitting in evidence the record of the trover case. Having reached this conclusion, the subsequent rulings of the trial court, complained of in the motion for a new trial, become immaterial. They resulted from the admission in evidence of the record of the trover case, without the admission of which, extrinsic evidence as to what matters were really litigated in the trial was not admissible. *Judgment reversed. All the Justices concur.*