### SMITH *v.* COOPER.

PER CURIAM. On the trial of a protest to a return of processioners the jury returned the following verdict: "We, the jury, find in favor of the line as claimed by the protestant, Mary N. Cooper, as to that part in her possession, to wit: Beginning at the corner of a fence at the north end of the fence dividing the lands of the protestant, Mary N. Cooper, and the applicant, J. E. Smith, and following the line of said fence for a distance of 62 rods, running southwest between the lines of applicant and said protestant, and as to the remainder of said line find in favor of the line as run by the processioners and as indicated in their return." In a subsequent action of complaint for land between the parties, to recover the land in dispute, a plea of res adjudicata was based on the judgment rendered upon the above verdict. The plaintiff in ejectment attacked this judgment, on the ground that the verdict was void for uncertainty. *Held,* that the verdict, construed in the light of the pleadings in the case in which it was rendered, was not void on the ground of indefiniteness; and the judge did not err in sustaining the plea of res adjudicata and dismissing the action of complaint for land.          *Judgment affirmed. All the Justices concur.*

No. 4781. JANUARY 16, 1926.

---

Boundaries 9 C. J. p. 293, n. 43; 294, n. 50.
Judgments 34 C. J. p. 1073, n. 31.
Trial 38 Cyc. pp. 1877, n. 15; 1878, n. 16, 17, 19; 1902, n. 50 New.

Complaint for land. Before Judge Graham. Bleckley superior court. January 12, 1925.

*Lawson & Ware,* for plaintiff.

*Bleckley & McWhorter,* for defendant.

RUSSELL, C. J., concurring specially. J. E. Smith brought a complaint for land against Mrs. Mary N. Cooper, and she filed a plea of res adjudicata alleging that a verdict and judgment had been rendered in the superior court of Bleckley County in 1920 between the same parties and for the same cause of action. By agreement of the parties the cause was submitted to the judge for determination, without the intervention of a jury, upon an agreed state of facts, in part as follows: "That the sole question in the case on the plea of res adjudicata was whether the original verdict and judgment in the case of Cooper, protestant, *v.* Smith, rendered Jan. 20, 1920, in the superior court of Bleckley County, Ga., was or could be made certain; that if it could, the plea should be sustained; but that if the verdict and judgment were void for uncertainty, the court should find against the plea. It was further agreed that the record in said cause, in which judgment was rendered on January 13, 1920, should be introduced in evidence in support of the defendant's plea of res adjudicata, and that in the event the judge trying said cause should sustain said plea of res adjudicata, that the effect of said judgment of the judge sustaining said plea of res adjudicata would be to dismiss the plaintiff's suit against the defendant." The judge sustained the plea of res adjudicata and ordered the plaintiff's suit to be dismissed. The plaintiff excepted to that judgment.

I am of the opinion that the trial judge correctly sustained the plea of res adjudicata, and from this the dismissal of the suit necessarily resulted. As said by counsel for plaintiff in error, "The issue in this case is single, and arises out of the defendant's plea of res adjudicata," and "whether a judgment based upon and following a verdict in a former suit between the same parties was void for uncertainty." "Verdicts are to have a reasonable intendment, and are to receive a reasonable construction, and are not to be avoided unless from necessity." Civil Code (1910), § 5927. "A verdict is certain which can be made certain." *Giles* v. *Spinks,* 64 *Ga.* 205 (3). In delivering the opinion of the court Mr. Justice Jackson said: "A verdict is certain which can be made certain by

what itself contains or by the record." In the case at bar both parties submitted the record in the adjudication of the former case between J. E. Smith, applicant, and Mrs. Mary N. Cooper, protestant, for the consideration of the judge and for the purpose of illustrating by the record the true meaning of the verdict upon which the judgment which followed was predicated. In *Williams* v. *Brown*, 57 *Ga.* 304, Mr. Chief Justice Warner, delivering the opinion of the court, said: "Where a verdict may, by a reasonable construction, be understood, and a legal judgment can be entered thereon, it is sufficient." In the fourth division of the opinion it was said: "The main issue submitted to the jury by the pleadings was, whether the plaintiffs had released, for a valuable consideration, property of the defendant from the lien of their judgment, or allowed funds arising from the sale of the defendant's property to be applied to junior fi. fas. with their consent, and to what extent. The jury found, under the evidence and charge of the court, 'that property enough had been released by Williams, Birnie & Company to satisfy the fi. fa. in full.' . . In view of the main issue tried, as made by the pleadings, the verdict of the jury, by receiving a reasonable intendment and construction, may be easily understood, and the appropriate legal judgment be rendered thereon by the court." The ruling in that case was followed and approved in *Seifert* v. *Holt*, 82 *Ga.* 761 (9 S. E. 843), and has been applied by this court, so far as I am aware, in every decision upon that subject. For further authority see 12 Enc. Dig. Ga. R. 686, 687.

The verdict rendered in the prior case, and upon which the defendant in error in this case bases her plea of res adjudicata, was as follows: "We, the jury, find in favor of the line as claimed by the protestant, Mary N. Cooper, as to that part of her possession, to wit: beginning at the corner of a fence at the north end of the fence dividing the lands of the protestant, Mary N. Cooper, and the applicant, J. E. Smith, and following the line of said fence for a distance of 62 rods, running southwest between the lines of applicant and said protestant, and as to the remainder of said line find in favor of the line as run by the processioners and as indicated in their return."

"The plaintiff contends that the sole question in the case is whether this verdict and the judgment based upon it and following it is void for uncertainty." In the words just quoted from his

brief, counsel for the plaintiff states the single question he desires to present for determination by this court. Counsel admits that the meaning of the verdict and judgment can be determined in either of two ways: first, "by construing the verdict in the light of what it contains, without reference to anything else," and second, "by construing the verdict in the light of its recitals in connection with the record in the case in which the verdict was rendered." Inasmuch as counsel agreed that the trial judge might use the record in construing the recitals of the verdict in order to ascertain the meaning of the verdict and judgment, it would be unfair to the trial judge for this court not to consider the record as exhibited in and attached to the bill of exceptions in construing the meaning of the recitals in the verdict. I shall therefore briefly advert to certain matters appearing from the record incorporated in the bill of exceptions. It appears from the record that upon the application of J. E. Smith, the plaintiff here, under the provision of section 3818 of the Civil Code, Allen, Grimsby, and Wright, as processioners, made a return to the ordinary of Bleckley County, with a certified plat attached, made by the surveyor in accordance with the provisions of section 3819. The return was as follows: "The undersigned processioners for the 1503rd district G. M., of said county, having been applied to by J. E. Smith, the owner of lot of land number 214 in the 21st land district of said county, to trace and mark anew the line on the southeast side of said lot of land, did appoint the 5th and 6th of February, 1919, at 10 o'clock a. m., as the time to trace and mark said line pursuant to law, and then and there it being made to appear that ten days written notice of the time and place had been given to Mary N. Cooper, the adjoining landowner on the southeast side of said lot of land, each, on the 6th day of February, 1919, at 10 o'clock, a. m., with the county surveyor did proceed to trace and mark anew said disputed line; and as our finding and return we hereto attach a plat made by said surveyor and duly certified, which properly represents the service made and the line traced and marked anew by us and said surveyor." The plat appears to be a map of land lots numbers 237, 238, 213, 214, 207, 208, 283, and 284 in the 21st land district of Bleckley County, from which it appears that the surveyor found an undisputed corner on the southeast side of lots numbers 207 and 208, and surveyed both north and south, thus clearly establishing

the original land-lot line between 283 and 284, 208 and 207, as well as between 213 (the south half of which belonged to Mrs. Cooper) and 214, which belonged to J. E. Smith. As it appears from the certificate of the surveyor that no line other than this was run or marked, it is apparent that the location of the true line between Smith and Mrs. Cooper was the only thing in controversy between the parties, and that Smith's land extended to the original line of land lot number 213; and therefore Mrs. Cooper had no land originally contained in land lot No. 214, though she claimed that her land extended beyond the original line between land lots 213 and 214.

However, Mrs. Cooper filed a protest to this return; and the ordinary, as was his duty, returned the papers to the clerk of the superior court of Bleckley County, as required by section 3823 of the Civil Code. The protest was as follows: (1) "That the line run by said surveyor and said processioners does not follow the true old original line between that portion of the lots of land Nos. 214 and 213 as originally marked, surveyed, and recognized, but follows a made line by W. H. Berryhill, county surveyor, and said processioners, but leaves the old original line, recognized and marked by previous surveyors and coterminous owners, and is a new line without marks or evidence to support it, and is therefore not the true, old original line between said Smith and Cooper. (2) That the plat attached to the return of the processioners and certified to by the county surveyor should follow the original line between said lots and the fence between said tracts, said fence having been built and constantly being repaired for forty years and being the established line between said tracts for more than forty years and so recognized; but, instead of marking anew along the fence-row and the original line between said lots, the surveyor and processioners went several feet, varying from 14½ feet at one end, and tapering to an incalculable space at the other in the form of a triangle, in on lot No. 213. (3) That protestant has been in actual possession under a claim of right, which has continued in her and those under whom she claims for more than 20 years, her line being recognized by an erected fence as part of the enclosure of her land and on the old original land line between lots Nos. 214 and 213. (4) That the line designated on said plat as being the line run and marked anew by said processioners is a new and

imaginary line without any marks to identify it, and not as the true line actually exists, and not a direct course from known original corners along said line; that for more than forty years a rail fence between said tracts has existed, and said protestant and those under whom she claims has been in actual possession under said enclosure, and that the original line along which said fence has been standing is the true line, and not the line marked anew by said surveyor and processioners."

Upon the trial of the issue the jury set aside the return of the processioners, by returning the verdict which we have already quoted. With the record of this former trial before us, I think that from the verdict and judgment the intendment of the jury may be readily ascertained, and, if so, effect should be given thereto. It is argued by learned counsel for the plaintiff that the verdict is void for uncertainty, because it is not possible to fix the beginning point mentioned in the verdict; that in the absence of a beginning point it is not possible "to locate any line, or course, or direction of any fence;" and "that it is not possible from the return of the processioners to locate or determine the remainder of the line as run by the processioners and indicated in their return, the processioners in their return not have anywhere marked any fence or line—the return of the processioners being so vague, indefinite, and uncertain it is impossible to locate thereon any point or course or direction of any line or fence." The second proposition, that it is not possible in the absence of a beginning point to locate a line or course, will be conceded as a correct statement of a fact. However, we can not agree with the contentions of the first and third propositions. The verdict fixes the beginning point at the corner of a fence, at the north end of the fence dividing the lands of the protestant and the applicant. This recital of the verdict necessarily implies that the evidence had informed the jury that there was a fence which they decided divided the lands of the protestant from the lands of the applicant. Very naturally the processioners had not marked any fence upon their return, and it was for the reason that Mrs. Cooper protested against the line marked by the processioners, upon the ground that the line as established by the processioners by stopping at the original land line between lots 213 and 214, instead of going over into number 214 to her fence, which she contended was the boundary of her .

land. The plaintiff in error also insists that it is impossible to locate any point or the course or direction of any line or fence, because of indefinitness and uncertainty of the return of the processioners. I fail to see how this fact, if it be such, would in any way tend to avoid the verdict of the jury or to render it uncertain. In finding the verdict in the former case in favor of the protestant, the jury necessarily set aside the return of the processioners, and it may be for the same reason as now suggested by counsel for plaintiff in error. However, it appears plainly from the protest that Mrs. Cooper, instead of agreeing to the correctness of the return of the processioners, which made the original land-lot line the line between the applicant and the protestant, asserted that she had land extending into the original land lot 214, to which she was entitled by reason of prescriptive possession and for other reasons. As appears from the plat in the record, Mrs. Cooper owned the southwest half of lot number 213 and Smith owned all of lot number 214 except the land, if any, claimed by Mrs. Cooper. It must be inferred from the verdict that there was a fence on the north side of the land of Mrs. Cooper, which extended to a corner at its north end with "the fence dividing the lands of the protestant . . and the applicant." In other words, the only thing to be determined by the jury in the trial of the former case (just as it is admitted to be the only issue in the case at bar) was the ascertainment of the true line between the land of Mr. Smith and the land of Mrs. Cooper, regardless of the original land-lot lines. The plat of the surveyor and the return of the processioners established the original line between land lots 213 and 214 as the true line. In her protest Mrs. Cooper contended that she owned a strip of land not included within the line established by the surveyor which varied from 14½ feet at one end and tapering to an incalculable space at the other in the form of a triangle, which was under fence and had been continuously under fence, "being the established line between said tracts for more than 40 years." The protestant set up further that her land was enclosed, and that she had been in actual possession of this triangle for more than twenty years. It is very plain, therefore, that the beginning point was where her fence on the southeast side of her lot in enclosing her land cornered, and this is the beginning point established by the verdict of the jury. So the first ground of objection can not be sustained.

Having found the corner, the jury fixed the direction and distance by pointing out a line running southwest with the fence between the land of the applicant and the protestant for 62 rods, where it would strike the line as established by the plat of the surveyor until it reached the original line between land lots 237 and 238, where, according to the plat of the surveyor, the land of Mrs. Cooper corners with another line at right angles with the established line, which is not a boundary of lot 214 claimed by J. E. Smith, and the course and distance of which is therefore utterly immaterial in this case. The learned counsel for the plaintiff strenuously insists that it is impracticable and impossible to locate a broken line, and that the line mentioned in the verdict consists of two lines without any guide as to the extent or direction thereof, by reason of the use of the words, "as to the remainder of said line find in favor of the line as run by the processioners and as indicated in their return." As already stated, it is apparent from the verdict that there was a fence running at least 14½ feet on the northeast side of the lot claimed by Mrs. Cooper, and that it cornered on the northeast corner of what she claimed. It was found that this fence was a line, and that for the purpose of separating the land of Mrs. Cooper from that of Mr. Smith it ran for 62 rods in a southwestern direction. If the jury intended to assume that beyond this 62 rods the fence was beyond Mrs. Cooper's line, then the jury found that, regardless of the fence, a straight line should be run until the line established by the surveyor was reached, and then that the line should be followed to the corner of Mrs. Cooper's land, where, as appears from the plat, a marked tree would be found. In the absence of any statement to the contrary, a line can always be established if the point from which it starts and the point at which it is to end are stated, because in such a case it is implied by law that the line will be perfectly straight. So I think it is plain that the jury intended by their verdict in this case, in which the only material question is the establishment of the true line between two coterminous landowners, that that line ran from the corner of a fence which at that time enclosed Mrs. Cooper's land at its northeast corner, running in a southwesterly direction for 62 rods where the fence was built along the same line established by the processioners to the marked-tree corner, which was the extreme southwestern line of both

parties. If these were the circumstances, then, as I have already stated, the jury intended to run the 62 rods with the fence, then run a straight line to the line established by the processioners, and then along that line to the same marked-tree corner. A verdict which is not certain can not be enforced, but id certum est quod certum reddi potest.

I concur in the result reached in this case by the majority, because I think the judgment of the lower court should be affirmed; but I can not agree with the statement that "the verdict, construed in the light of the pleadings in the case in which it was rendered, was not void on the ground of indefinitness." First, because from this statement it may be inferred that the case is one in which the pleadings alone were before the court; whereas as a matter of fact, in this case, by agreement of both parties extrinsic evidence was admitted for the consideration of the court in determining the true meaning of the verdict and the judgment based upon it. Nor can I agree with this language, because from its use it may be implied that the court is confined to the pleadings in determining the issue presented in this case. Viewed in this light the statement would be both inaccurate as a general rule of law, and inappropriate in the present instance because no such issue is raised in the record. If by the language used in the headnote, "the verdict, construed in the light of the pleadings," the majority means to say that the court is confined to the pleadings alone upon an adjudication as to the merits of a plea of res adjudicata, then "with the light now before me," I am not prepared to give my assent. Consequently, since in the case at bar by agreement of counsel the record in the former case was admitted with the agreement that the court should consider it in deciding this case, I shall content myself with reviewing the case, not from the standpoint of speculation, but as it was actually presented to the trial judge. I would not be willing to affirm the judgment had the trial judge been confined to the pleadings in this case. I am inclined to think, that, in the absence of the extrinsic evidence offered to clarify the verdict, the judgment in the processioning case would be so vague and uncertain as that the contention of the plaintiff in error—that it is void for uncertainty—should be sustained.

I think the learned trial judge, construing the judgment in the light of the extrinsic evidence which was adduced and which ap-

pears in the record, properly found that the *merits* of the present case were actually in issue in the former processioning proceeding, since the controlling issue both in the former proceeding and in the case at bar was the determination of the single boundary, or land line, which separates the land of the plaintiff from the land of the defendant. However, although the precise contentions of Mrs. Cooper (protestant in the processioning proceeding of 1920, and also the defendant in the case at bar) as to the designated tract of land appear from her protest in the pleadings, still one thing that is uncertain in the verdict, to wit, the location of the line objected to by the protestant as it was originally run by the processioners, and which is referred to in the verdict, is not made plain except by extrinsic evidence derived from the return of the processioners and the plat thereto attached. The protest is a part of the pleadings, but in this case it in no way aids the court in finding a line, the correctness of which was disputed by the protestant, and which was not referred to in the protest otherwise than by an averment that it was not run in accordance with law, and was therefore void. In the protest, as a part of the pleadings, this essential boundary line referred to in the verdict is in the air. It takes the extrinsic evidence disclosed by the plat attached to the return of the processioners, and the return itself, to locate the line by bringing it to the ground. While "A verdict is certain which can be made certain by what itself contains or by the record" (*Giles* v. *Spinks,* 64 *Ga.* 205), it is my opinion that the case before us is one in which the verdict can not be made certain by the pleadings alone. The law which enjoins that verdicts shall not be avoided except from necessity (Civil Code of 1910, § 5927) does not forbid the introduction of extrinsic evidence when such evidence is necessary in order to make verdicts certain. I bear in mind certain essential differences between a plea of estoppel and a plea of res adjudicata, but there are several particulars in which the same general rules apply to both of these pleas.

Even in cases of res adjudicata, "Where the pleadings include an issue [as in this case] which might or might not be taken as having been determined by the verdict and judgment, one setting up the judgment by way of estoppel [which apparently was the case here] may show by extrinsic evidence that the issue thus included by the pleadings was then in fact actually litigated, and

therefore was determined by the judgment." 6 Cum. Sup. Enc. Dig. Ga. R. 383 et cit. In *Johnson* v. *Lovelace,* 61 *Ga.* 62, where, as in this case, there was no formal plea of res adjudicata, the court held: "1. The record of a former claim is admissible to show that the points involved are res adjudicata, without any special plea. 2. When this is done by the plaintiff, the claimant should be permitted to introduce all relevant evidence in defense of his ·title." In delivering the opinion of the court, Mr. Chief Justice Warner said: "When it appears on the face of the record that the question in controversy in the second suit was litigated in the first, the mere production of the record will be enough, *but when it does not so appear,* it must be shown aliunde by parol evidence, and the burden of proof rests on the party who maintains the affirmative. If the record shows that the same matters *might* have been litigated in the former action, then the fact that they were actually decided in that former action may be proved by extrinsic evidence." In *Eagle & Phenix Mfg. Co.* v. *Van Leonard,* 67 *Ga.* 648, 651, this court said: "The description of the dam in the levy, it is insisted, does not show that it is the dam and water-power alluded to in the claimant's plea; that another dam was then levied on and in issue on that trial; but that was an issue of fact, we think, if not plain in the record, for the jury to settle by aliunde parol proof. In such a case · that sort of proof is admissible." As said by Mr. Justice Atkinson in delivering the opinion of the court in *Irvin* v. *Spratlin,* 127 *Ga.* 240, 244 (55 S. E. 1037, 9 Ann. Cas. 341), "It would seem that if it would be permissible at all to go behind the judgment with parol evidence, it should be only for the discovery of truth, and this ought to permit . the introduction of any competent evidence tending to accomplish that end." It was also said that the record might be offered as extrinsic evidence as well as parol extrinsic evidence. "If the matter which was actually passed upon by the court was the defense which went to the merits of the case, and the judgment of the court was actually upon the merits of the case, the pleadings authorizing it, whether right or wrong, the judgment was conclusive between the parties and should estop them from the maintenance of another suit involving the same matter." *Irvin* v. *Spratlin,* supra. The judgment of the lower court was reversed for excluding the documents and testimony which were offered for the purpose of making plain what was

actually involved in the former suit. In *Halliday* v. *Bank of Stewart County*, 128 *Ga.* 639, 647 (58 S. E. 169), an objection to the introduction of the record of a former suit upon a stated ground was held to be well taken, but this was for the reason already stated, that "it is clear that the matter in controversy in the case on trial could not have been litigated under the plaintiff's pleadings in the former suit." As said by Mr. Chief Justice Warner in the *Johnson* case, supra, if the pleadings in the case at bar themselves make plain that the prior issue is not the same as that involved in the pending litigation, no resort to extrinsic evidence is necessary or allowable. But in delivering the opinion of the court, in ruling on another phase of the *Halliday* case, Mr. Chief Justice Fish said: "But although the mere production in evidence of the record in a former case between the same parties may not show that the subject-matter of the second suit is res adjudicata because it had, of necessity, to be passed upon before the judgment in the previous suit could be rendered, yet if such subject-matter might have been passed upon in the former litigation, under the pleadings shown by the record therein, the fact that it was then passed on may be shown by extrinsic evidence." Citing *Draper* v. *Medlock*, 122 *Ga.* 234 (50 S. E. 113, 69 L. R. A. 483, 2 Ann. Cas. 650), and authorities cited.