ANDERSON, executrix, *v.* BLACK *et al.*

60

No. 15032.   February 7, 1945.   Rehearing denied March 7, 1945.

*Grady Vandiviere* and *Smith, Smith & Bloodworth,* for plaintiff.
*Wheeler, Robinson & Thurmond,* for defendants.

ATKINSON, Justice. (After stating the foregoing facts.) This case was assigned to the writer to present the opinion of the majority of the court. It does not represent the writer's views, as will appear in a dissent attached hereto.

The controlling question is, whether a judgment based on a suit to recover damages for injury to land located in a county other than the county in which the suit was brought, and in which title was put in issue and passed upon, is conclusive in a subsequent ejectment suit involving the same land between the same parties in the county where the land in dispute is located. The suit relied on in the plea of res judicata and estoppel by judgment was a proceeding in trespass to recover damages to realty located in Dawson County, and was filed in Hall County, the residence of a defendant against whom substantial equitable relief was sought. Black, who was made a party, claimed that he was the owner of the land in dispute, and thus invoked the question of title in the Hall County suit. Anderson, the plaintiff in the suit for damages, demurred on the ground, among others, that the amendment showed on its face that the land was located in Dawson County, that the effect of the "amendment and the relief prayed for therein was one sounding in equitable ejectment," and that the venue was in the superior court of Dawson County, and not in the superior court of Hall County. The demurrer was overruled, and Anderson filed exceptions pendente lite. This court, in holding that the trial judge did not err in overruling the demurrer, said: "If an action be one for trespass to realty, and not one to recover possession of the land, ownership of the land is only incidentally involved, and the fact that the land may be situated in another county will not deny jurisdiction to determine the main controversy, even though it depends upon the contested ownership of the realty. See *Huxford* v. *Southern Pine Co.,* 124 *Ga.* 181 (5) (52 S. E. 439), where it was ruled: 'In actions for trespass to realty, ownership of the premises is incidentally involved; and while in such cases a special finding by the jury as to ownership is not required, the incorporation of such a finding into the verdict will not vitiate it,

if the verdict is in other particulars regular and proper.' In the opinion Justice Cobb further stated: 'If the purpose of the suit were to recover possession of the land, of course the superior court of Coffee County [the land being in another county] would have no jurisdiction. Such was not the object to be attained by the judgment prayed. It was simply to restrain the defendant· from doing acts prejudicial to the rights of the plaintiffs, one of whom claimed to be the owner of the land. The title to the property was incidentally and collaterally involved, but it was not such a suit respecting title to land as under the constitution is required to be brought· in the county where the land lies. It was incumbent upon the plaintiffs to show that they had such an interest in the property as a court of equity would protect, and they showed this interest by showing a complete chain of title. While it was not necessary for the jury to specifically find that the property belonged to the plaintiff, it was necessary that the jury, before they could find in favor of a permanent injunction, should believe that ownership in the plaintiff was established. The insertion in the verdict of the finding as to ownership would not vitiate the verdict.' " *Anderson* v. *Black,* 191 *Ga.* 631 (supra).

In article 6, section 16, paragraph 2, of the constitution (Code, § 2-4302), it is declared: "Cases respecting titles to land shall be tried in the county where the land lies, except where a single tract is divided by a county line, in which case the superior court of either county shall have jurisdiction." The Code, § 3-203, likewise provides: "All suits respecting the title to land shall be tried in the superior court of the county wherein the land lies." Anderson, the plaintiff in error, relies on the above constitutional provision, and insists that the judgment rendered in the Hall County case, is not conclusive on the question of title now presented in the ejectment suit from Dawson County, where the land lies. "Under the doctrine of res judicata, 'a judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside.' Code, § 110-501. A somewhat different rule applies in regard to the doctrine of estoppel by judgment, since the latter doctrine has reference to previous litigation between

the same parties, based upon a different cause of action. In the latter case, there is an estoppel by judgment only as to such matters within the scope of the previous pleadings as necessarily had to be adjudicated in order for the previous judgment to be rendered, or as to such matters within the scope of the pleadings as might or might not have been adjudicated, but which are shown by aliunde proof to have been actually litigated and determined. . . Under both rules, in order for the former decision to be conclusive, it must have been based, not merely on purely technical grounds, but at least in part on the merits where under the pleadings they were or could have been involved. Code, §§ 110-503, 110-504." *Sumner* v. *Sumner,* 186 *Ga.* 390 (2) (197 S. E. 833), and cit.

Thus it becomes necessary to ascertain just what land was in litigation in the Hall County case. Anderson, in bringing his suit for trespass, alleged that he was the owner of described land lying on the west side of Black's Mill Creek, and that upon the same, just west of said creek, there was a vast amount of granite. Black's answer denied that Anderson owned "the lands or rock quarry" from which granite had been taken. Black amended his answer by alleging ownership in himself, and set up that he "was the owner and in possession of all that part of land lot 417 in the 13th district and 1st section of Dawson County, Georgia, lying on the opposite side of the creek from what is known as Black's Mill, and beginning at a point below said mill near what is known as the Carder near the ford of the stream where a road at one time crossed and at a corner marked by a fence many years ago, and running thence along the fence row and line up the hill in the direction of what is known as the Virgil Smith property to a point near the crest of the bluff or hill where the fence made a left turn; thence along the old fence line to the road where the fence thence turned back toward the creek and ran to the mill, just below a bridge, but nevertheless the line at this point continued across this road to another fence; thence up this fence to the creek; thence down the creek to the beginning corner." This court, in referring to the above description in *Anderson* v. *Black,* supra, said: "Likewise we think the claim that Black, in asserting his ownership of the property, did not sufficiently describe it, and that his possession was not sufficiently shown, is without merit." In the 3d division of the opinion, it was said: "There was proof from many

witnesses that as respects the quarry site it was located in what for many years was used as a hog lot, that there was a fence around it connecting it with the mill site conveyed to Black, and that Black's predecessors in title, his grandfather and father, had occupied and used it in connection with the mill and its operation, that they had declared it to be theirs, had so treated it, and that Virgil Smith and his wife, predecessors of Anderson (and grantees under James M. Black), had acquiesced in its use up to the fence (which is now destroyed but the line and location of which is discernible), had stated to others that it was Mr. James M. or N. D. Black's property and not theirs, and (in effect) that they owned that adjoining." Again in the 8th division of the opinion this court said: "While the evidence on the question of possession and acquiescence in dividing line, as upon all issues, was in sharp conflict, we hold, as our previous rulings indicate, that it was sufficient to support the verdict."

The petition, answer, verdict, and decree in the Hall County case show that the controversy as there presented centered around the rock-quarry site, located on land that, for many years, had been used as a hog lot. The language in the plea of estoppel, "these defendants aver that the effect of the pleadings, judgment, and decree in the superior court of Hall County, Georgia, was to adjudicate the title and ownership of said property as being in John D. Black, and to adjudicate that M. M. Anderson had no title or interest in and to said property now in controversy or any part thereof," construed most strongly against the pleader, means that Black was only claiming title to land that had been necessarily and actually adjudicated in the Hall County case, as described in his plea of estoppel. Furthermore, if the defendant is claiming an estoppel as to the entire southwest half of lot 417 lying west or southwest of Black's Mill Creek, his plea would not be good, because, even if he alleged that all of the southwest half was incidentally involved, he does not allege that title was necessarily or actually adjudicated as to the entire southwest half.

There was no conflict of evidence as to the facts set forth in the plea of estoppel by judgment. Under all the circumstances, this decision is to be construed as affirming the judgment overruling the demurrer, and the direction of the verdict in favor of the

plea of estoppel, with respect to the small tract of land only, the title of which was necessarily and actually adjudicated in the Hall County case. Since there may be some doubt, direction is given that the judgment of this court as now entered shall not apply to any part of lot 417 other than the portion above indicated. As to title actually adjudicated, see *Garrick* v. *Tidwell*, 151 *Ga.* 294 (106 S. E. 551), and cit.

*Judgment affirmed, with direction. All the Justices concur, except Atkinson, J., who dissents, and Wyatt, J., absent because of illness.*

ATKINSON, Justice, dissenting. The instant suit is one in ejectment for the recovery of land, filed in Dawson County where the land lies. The suit relied upon in the plea of res judicata or estoppel by judgment was a proceeding in trespass to recover damages to realty, and was filed and tried in Hall County, the residence of a defendant against whom substantial equitable relief was sought. The land sued for in the instant case is part of the same land involved in the Hall County case.

The constitution (Code, § 2-4302), provides: "Cases respecting titles to land shall be tried in the county where the land lies, except where a single tract is divided by a county line, in which case the superior court of either county shall have jurisdiction." The land here involved lies in Dawson County. The previous Hall County suit, the proceedings of which are set forth fully in the plea of res judicata or estoppel by judgment, show that suit to be one for injunction and damages to realty; and while both the plaintiff and the defendant claimed and sought to establish title to the realty, yet the title was only incidentally involved, as illustrating the right to recover damages.

A suit is not one "respecting title to land" where the title to the land is only incidental or collateral to the main issue. *Bivins* v. *Bivins*, 37 *Ga.* 346; *Powell* v. *Cheshire*, 70 *Ga.* 357 (48 Am. R. 572); *Moore* v. *O'Barr*, 87 *Ga.* 205 (13 S. E. 464); *Black* v. *Fritz*, 98 *Ga.* 32 (25 S. E. 188); *Huxford* v. *Southern Pine Co.*, 124 *Ga.* 181 (supra); *Robins* v. *McGehee*, 127 *Ga.* 431, 436 (56 S. E. 461). Where it is sought to determine and adjudicate title to land, not as incidental or collateral to another question, but as a primary issue which would be conclusive as to title as provided by the Code, § 33-119, such issue must be tried in the county where

the land lies. And where, in a suit in Hall County, title to land in Dawson County is only incidentally or collaterally involved, a judgment or decree determining and awarding the title to land in Dawson County would be void for lack of jurisdiction of the subject-matter. Code, § 110-709; *Towns* v. *Springer,* 9 *Ga.* 130; *Beverly* v. *Burke,* 9 *Ga.* 440 (9) (54 Am. D. 351); *Deans* v. *Deans,* 164 *Ga.* 162 (137 S. E. 829); *Wilson* v. *Wilson,* 170 *Ga.* 341 (3) (153 S. E. 10); *Allen* v. *Baker,* 188 *Ga.* 696 (4 S. E. 2d, 642). Where a court has no jurisdiction of the subject-matter of a suit, the parties cannot waive it either by appearance and pleading or otherwise. *Epps* v. *Buckmaster,* 104 *Ga.* 698 (2) (30 S. E. 959); *Smith* v. *Ferrario,* 105 *Ga.* 51, 53 (31 S. E. 38); *Cutts* v. *Scandrett,* 108 *Ga.* 620 (3) (34 S. E. 186).

The majority opinion does not predicate its solution of the case on the above-quoted rules of law, but determines the issue on the basis that the suit for land in Dawson County is estopped by the judgment rendered in Hall County. In the Hall County suit, the principal issue was damage to realty. In order to determine whether there was damage or not, and if so how much, the ownership, or title, to the land was only incidentally involved; and determining this question as an incident to the right to recover damages could not be construed as a judgment as to the title of land which would act as an estoppel in an ejectment suit in Dawson County for the same land. The courts of Hall County nave no jurisdiction to determine the title to land in Dawson County, either directly or indirectly. There is no principle of law or procedure more firmly embedded in our system of jurisprudence than that disputes over land titles must be adjudicated in the superior court of the county where the land lies. To extend the doctrine of estoppel by judgment, so that the judgments of the courts of one county can in effect adjudicate the titles of land in another county, would be entering upon an uncharted field, the effect of which would be to circumvent the constitutional provision that "cases respecting titles to land shall be tried in the county where the land lies" (Code, § 2-4302), and thereby do indirectly what can not be done directly. Applying the doctrine of estoppel by judgment to the extent appearing in the majority opinion would subject the title of the most valuable piece of realty in the State to adjudication in another county and in a justice's court, a

county court, or a city court, if the owner instituted a common-law suit against a former tenant for rent, and the tenant defended by alleging ownership of the property. The same situation might also apply to foreign judgments, if the suit for rent was against a resident of another state. No judgment should be used to estop the procurement of another judgment, unless the judgment so used is one of a court having jurisdiction to determine the question covered by the judgment that is sought to be used as an estoppel. A judgment is not conclusive on any point or question which, from the nature of the case, the form of action, or the character of the pleadings, could not have been adjudicated in the suit in which it was rendered. "The record of a former suit between the same parties is not admissible in evidence in support of a plea of estoppel by judgment, when it appears therefrom that the subject-matter of the second suit could not have been litigated under the pleadings in the first." *Halliday* v. *Bank of Stewart County*, 128 *Ga.* 639 (2) (58 S. E. 169). See also, *Pollock* v. *Gilbert*, 16 *Ga.* 398 (6) (60 Am. D. 732) ; *Vada Naval Stores Co.* v. *Sapp*, 148 *Ga.* 677, 682 (98 S. E. 79) ; 34 C. J. 935, § 1339; 30 Am. Jur. 940, § 201.

The case of *Garrick* v. *Tidwell* (supra), cited in the majority opinion, is not authority for the position there taken. That case and *Tomlinson* v. *Driver*, 53 *Ga.* 9, *Hammond* v. *Thornton*, 107 *Ga.* 259 (33 S. E. 183), and *Irvin* v. *Spratlin*, 127 *Ga.* 240 (55 S. E. 1037, 9 Ann. Cas. 341), which are there cited, are all different as to facts and in principle from the instant case. In the *Garrick, Tomlinson,* and *Irvin* cases, there had been proceedings against tenants holding over, under what in the present Code are sections 61-301 et seq.; and in each case the proceedings were defended on the ground that title was in the defendant. Those decisions simply hold that in such cases title has been determined and adjudicated, and that this judgment could be pleaded as an estoppel against a subsequent suit for the land instituted by the losing party. In the *Irvin* case, both the former and latter actions were suits for land. In all of those cases where the judgment of a former proceeding was held to be an estoppel as against subsequent suits for land, the prior judgment was one that had been rendered by the superior court of the county wherein the land was situated.

If, in the Hall County suit, the title to the land was only incidentally involved, it would not be a suit respecting title to land

so that such judgment could be pleaded in bar to a suit in ejectment in Dawson County; and if the Hall County suit be construed to the effect that the title to the land was not just incidentally involved, but was directly in issue and the title thereto adjudicated by the judgment therein rendered, then the judgment is void for lack of jurisdiction of the subject-matter. In neither view, would a plea of res judicata or estoppel by judgment, based thereon, withstand a general demurrer.

I do not concur in the majority opinion for another and more specific reason as to why the doctrine of estoppel by judgment does not apply. The Hall County suit was one for damages on account of trespass. The adjudication of title was not essential to a determination of the issues. The right of possession and use of the land was controlling as to whether the plaintiff was entitled to damages, and if so how much. Damages for trespass are based, not upon title, but upon the right of possession and use. Code, § 105-1403; *McDonough* v. *Carter*, 98 *Ga.* 703 (25 S. E. 938). A tenant may have a right of action against his landlord for trespass. *Connally* v. *Hall*, 84 *Ga.* 198 (10 S. E. 738). The Hall County case was a damage suit for trespass, and the fact that title was pleaded as a defense would not authorize the judgment there rendered to be an estoppel in the instant case, since evidence of title was material, not as establishing title, but only as illustrating the right of possession and use.

In *Sumner* v. *Sumner*, 186 *Ga.* 390 (2) (supra), where the doctrine of estoppel by judgment is defined, the court states two instances where it applies: (a) "Only as to such matters within the scope of the previous pleadings as necessarily had to be adjudicated in order for the previous judgment to be rendered;" and (b) "Such matters within the scope of the pleadings as might or might not have been adjudicated, but which are shown by aliunde proof to have been actually litigated and determined." It will be noted that both instances provide that the matters (sought to be used as an estoppel) shall be "within the scope of the pleadings;" and this provision would preclude the doctrine of estoppel by judgment from applying in the instant case, for the reason that, even though the defendant in the Hall County case pleaded title, the title was not within the scope of the pleadings. "Scope" means "that at which one aims; that which is purposed to be

reached or accomplished; ultimate design, aim, or purpose; intention; object." Webster. The scope of the pleadings in the Hall County case was to set forth the right of possession and use, and any allegation of title was not the scope of the pleadings, but mere allegation of evidence indicating the right to the possession and use. Within the scope of the pleadings does not mean within the contents of the pleadings. The phrase, "scope of the pleadings," must be construed as the ultimate design and object of the pleadings; and their scope should not be determined and controlled by particular allegations therein, even though the effect of such allegations would be evidence to aid or establish the ultimate object and design. As an illustration of this distinction, suppose a man who had been using my realty moved to another county and I there sued out a distress warrant before a justice of the peace, to which a counter-affidavit was filed on the ground that the defendant had title to the property; and upon the trial the justice of the peace gave a judgment for the defendant; could the defendant then return, take possession of the realty, and use this judgment as an estoppel to an ejectment suit by me?' Under the majority opinion, he could, but I do not think so. The scope of his counter-affidavit was a denial of the relation of landlord and tenant, and his assertion of title was no more than an allegation to negative this relationship, as a denial of this relationship was the scope— the design, aim, purpose, object—of his counter-affidavit.